IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**TIMOTHY WALDRON,**

    **Movant,**

v.                                    **Case No. 2:19-cv-00185**
                                        **Criminal Case No. 2:17-cr-00116-01**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court is Movant Timothy Waldron's ("Waldron") *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, (ECF No. 40). This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition ("PF&R") pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that Waldron's motion be denied and this matter be dismissed, with prejudice, and removed from the docket of the Court. Given that the undersigned conclusively **FINDS** that Movant is not entitled to the relief requested, an evidentiary hearing is not warranted. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

**I.**     **Procedural Background**

On June 28, 2017, Waldron was indicted in the United States District Court for the

1

Southern District of West Virginia on one count of knowingly and intentionally possessing with intent to distribute 500 grams or more of a mixture containing a detectable amount of methamphetamine (Count I); one count of possessing firearms in furtherance of a drug trafficking crime (Count II); and one count of being a felon in possession of firearms (Count III). (ECF No. 1).[1] On January 10, 2018, Waldron pleaded guilty to Count I of the indictment pursuant to a written agreement with the United States. (ECF Nos. 23, 24, 25). In exchange for Waldron's guilty plea, the United States agreed to dismiss Counts II and III of the indictment. (ECF No. 25 at 2). On April 16, 2018, Waldron was sentenced to 144 months of imprisonment followed by five years of supervised release. (ECF No. 33). Waldron did not appeal his conviction or sentence.

On March 15, 2019, Waldron filed the instant motion pursuant to 28 U.S.C. § 2255. (ECF No. 40). In the motion and supporting memorandum, Waldron raises one ground for relief. Waldron claims that his trial attorney, David R. Bungard, provided ineffective assistance of counsel when he failed to pursue a motion to suppress evidence obtained during a warrantless search conducted by law enforcement of an ATV and a trailer rented by Waldron. *Id.* Waldron asserts that Bungard prepared a motion to suppress, which was based upon the decision of the Supreme Court of the United States ("Supreme Court") in *Florida v. Jardines*, 569 U.S. 1 (2013). Bungard noted in the motion that the Supreme Court was preparing to rule on an issue, similar to the one raised by Waldron's suppression motion, in a pending matter, *Collins v. Virginia,* 138 S. Ct. 1663 (2018). Despite acknowledging the potential for a beneficial ruling in *Collins*, Bungard nonetheless convinced Waldron to abandon his motion to suppress and enter a guilty

---

[1] All document numbers are taken from Waldron's underlying criminal action, Case No. 2:17-cr-00116-01.

2

plea. Four months after Waldron followed that advice, the Supreme Court released its decision in *Collins*, which was very favorable to Waldron's motion to suppress. Waldron claims that Bungard should have requested a stay of his plea hearing until the Supreme Court ruled in the *Collins* case. (ECF No. 41).

On May 23, 2019, the United States filed a response in opposition to Waldron's motion. (ECF No. 46). The United States contends that Waldron's motion should be denied, because he cannot demonstrate ineffective assistance of counsel. In support of its position, the United States provides the following additional background information.

On March 14, 2014, Waldron pled guilty to and was convicted in the Circuit Court of Wood County, West Virginia of fleeing an officer and possessing more than 15 grams of marijuana. (ECF No. 46-1). Waldron was sentenced to 18-months' imprisonment, which was suspended in favor of placing Waldron on three years of probation. (*Id*. at 2). Waldron was advised in open court of the terms and conditions of probation, and he agreed to obey all of them. (*Id.*). Included in the terms and conditions of probation was a requirement that Waldron permit his probation officer to visit him at any time at any place. (*Id*. at 7). In addition, Waldron agreed that he would submit to "any and all searches of [his] person, residence, property or effects by the probation officer at any time the probation officer deems it necessary based upon reasonable suspicion or safety concerns, and agree to the seizure of any property found or discovered as a result of the search." (*Id.*)

According to the United States, on November 10, 2016, Waldron's probation officer, Casey Kuhn, had received information that Waldron was not living at the address he had provided to Officer Kuhn, and that Waldron was selling methamphetamine. (ECF No. 46 at 2). Accordingly, Officer Kuhn enlisted the assistance of members of the

Parkersburg Narcotics Task Force to help her conduct a check of Waldron's current activities. Officer Kuhn and the other officers went to an address where Waldron was suspected to be located and found him driving toward the address in a Jeep that was occupied by two additional passengers. Officer Kuhn asked one of the task force members, who was a K-9 officer, to have his dog conduct a "sniff" of the Jeep. When the dog alerted, a search was performed of the vehicle and yielded two handguns, digital scales, a bag of suspected methamphetamine, and several syringes. (ECF No. 46 at 2). Although Waldron's passengers claimed ownership of the items, Waldron was arrested for possession of contraband. The officers conducted a pat-down search of Waldron and located a ring of keys and two cell phones. (*Id.*).

One of the officers noticed that the key ring contained a key that appeared to operate an ATV. Noticing an ATV parked in front of a nearby trailer, the officer tried the key and learned that the key started the vehicle. (*Id.* at 3). Accordingly, the officers approached the trailer to see if there was someone there with whom they could speak. Upon walking onto the front porch of the trailer, the officers smelled a strong odor of marijuana. The officers learned from calling the owner of the trailer that Waldron had been renting it. Accordingly, the officers decided to get a search warrant for the trailer. While waiting for the warrant, the officers used another key on Waldron's key ring to access the trailer and secure it. (*Id.*). In the course of doing so, the officers observed, sitting in plain view, marijuana on the kitchen counter, sandwich baggies, and a large safe.

After obtaining the warrant, officers searched the trailer and found numerous other items consistent with drug trafficking; including, 1,295 grams of methamphetamine; 5 grams of marijuana; ten Xanax pills; two rifles, $17, 258 in currency and a $300 check; three sets of digital scales; magazines and ammunition for the

firearms; and drug paraphernalia. (ECF No. 41 at 12-13, 18). Waldron subsequently made incriminating statements during an interview with law enforcement agents. (*Id*. at 17).

The United States argues that Waldron's claim of ineffective assistance of counsel fails for two key reasons. First, Waldron's counsel made a reasonable strategic choice to forgo filing a motion to stay the Rule 11 hearing pending a decision in *Collins*. (ECF No. 46 at 5). The United States maintains that counsel had no way of knowing whether the Supreme Court's decision in *Collins* would be helpful, and by delaying the plea hearing, counsel risked losing a beneficial plea agreement. Second, the United States contends that Waldron was not prejudiced by counsel's thoughtful choice, because the ruling in *Collins* was not especially helpful to Waldron. According to the United States, the facts underlying the *Collins* decision were readily distinguishable from the facts of Waldron's case; thus, the decision had no bearing on his motion to suppress. The United States points out that, unlike the defendant in *Collins,* Waldron was on probation at the time his property was searched, and subject to the conditions of his probation, he consented to any and all searches based on his supervising officer's reasonable suspicion. In view of the information provided to Waldron's probation officer that Waldron was living somewhere other than his official residence and was trafficking drugs, a warrantless search of his ATV and premises was proper. (*Id*. at 6-7).  Therefore, Waldron cannot demonstrate deficient performance by counsel, or that counsel's advice was prejudicial to Waldron.

Waldron was given sixty days to reply to the response filed by the United States. (ECF No. 44). More than sixty days have expired since the response was submitted; however, Waldron has not filed a reply. Therefore, this matter is ready for resolution.

II. **Discussion**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction

5

or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02CR65, Civ.A. 2:05CV91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006).

When a movant alleges ineffective assistance of counsel under § 2255, the movant claims a violation of rights guaranteed by the Sixth Amendment. *Strickland v. Washington,* 466 U.S. 668, 680 (1984). Under *Strickland,* a criminal defendant can prove ineffective assistance of counsel by meeting the requirements of a two-pronged test. *Id.* at 687. The defendant carries the burden of satisfying both prongs of the test, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 1994).

First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687-88. When evaluating counsel's performance under the first prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689. Thus, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance … [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The inquiry under Strickland is "whether an attorney's representation amounted to

6

incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter,* 562 U.S. 86, 88 (2011).

Second, the defendant must show that he was actually prejudiced by the ineffective assistance of counsel. *Strickland,* 466 U.S. at 687. To establish actual prejudice from counsel's deficient performance, "[p]etitioner must show that 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed ... by the Sixth Amendment.'" *DeCastro v. Branker,* 642 F.3d 442, 450 (4th Cir. 2011) (citing *Harrington,* 131 S.Ct. at 787)); *see also, Strickland,* 466 U.S. at 687. It is insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Strickland,* 466 U.S. at 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In the context of a guilty plea, the movant carries a heavy burden under § 2255. By entering a guilty plea, the criminal defendant "has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). Therefore, a guilty plea "represents a break in the chain of events which has preceded it in the criminal process." *Id.* Statements made during a hearing to accept a guilty plea are afforded a strong presumption of veracity and subsequent attacks that contradict these statements may generally be dismissed as frivolous. *U.S. v. Lemaster,* 403 F.3d 216, 221-222 (4th Cir. 2005). As the Fourth Circuit explained:

> [A] defendant's solemn declarations in open court ... carry a strong presumption of verity ... because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule

> 11 plea colloquy. … Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.

*Id.* Consequently, a criminal defendant is precluded from raising alleged constitutional deprivations that occurred prior to pleading guilty and "may only attack the voluntary and intelligent character of the guilty plea" by demonstrating that his counsel's performance was inadequate under the Sixth Amendment. *Tollett v. Henderson,* 411 U.S. at 267; *see, also*, *Fields v. Attorney General of State of Md.,* 956 F.2d 1290, 1296 (4th Cir. 1992)("A guilty plea does not bar collateral review of allegations of ineffective assistance of counsel in so far as the alleged ineffectiveness bears on the voluntariness of the guilty plea."). In other words, the movant under § 2255 must not only rebut the presumption that counsel performed within the wide range of reasonable professional competence, but must also demonstrate that "there is a reasonable probability that, but for counsel's errors, [movant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985).

Significantly, in this case, Waldron does not explicitly allege anywhere in his motion or memorandum that his plea was not voluntary or intelligent. To the contrary, he relies on portions of the plea agreement in support of his motion. Waldron complains that he "did not receive the most favorable outcome to him as allowed in this proceeding according to his plea-agreement," (ECF No. 41 at 4), which is not the same as claiming that his plea was not intelligent or voluntary. The record here indicates that Bungard discussed the options with Waldron and, ultimately, they agreed that the best option was a guilty plea pursuant to the tendered plea agreement.

Notwithstanding evidence that Waldron made a voluntary and reasoned choice to

plead guilty, if the Court were to accept Waldon's contention that he was forced into his decision by Bungard, Waldron's § 2255 motion is still without merit, because Bungard provided effective assistance of counsel. Looking at the first prong of *Strickland,* Waldron acknowledges that Bungard drafted a motion to suppress, which Waldron attaches to his § 2255 motion. (ECF No. 41 at 12-41). The draft motion to suppress makes clear that Bungard recognized a possible legal argument on behalf of his client and performed all of the work necessary to pursue the argument. Waldron further concedes that he and Bungard discussed the motion to suppress and considered the option of not pursing the motion "in order to avoid the risk of the Government proceeding to file a 21 U.S.C. § 851 Information that could have increased the mandatory minimum term of imprisonment from ten to twenty years as well as risk the Government would proceed to send the seized quantities of methamphetamine to an out-of-state lab for purity testing." (*Id.* at 34). Thus, Bungard considered the risks and benefits of filing the motion and explained those risks and benefits to Waldron. Finally, Waldron confirms that a strategic decision was made to forgo the motion to suppress, despite the potential that the *Collins* decision might help to support the motion. Waldron may regret this decision in hindsight, but that does not alter the fact that Bungard performed precisely as a defense attorney should perform when faced with alternate ways to resolve a case.

As the United States points out, strategic decisions made by counsel after a thorough investigation of the facts and law relevant to plausible options are "virtually unchallengeable." *Wiggins v. Smith,* 539 U.S. 510, 521 (2003) (quoting *Strickland,* 466 U.S. at 690). The record before the Court indicates that Bungard considered the risks attendant to refusing the plea agreement and balanced those risks against the potential that his Fourth Amendment argument would be successful. Bungard explained to

9

Waldron that the motion to suppress was likely to fail given Waldron's status as a probationer. (ECF No. 41 at 36). Bungard expressed concern that the United States would be "vindictive" in its prosecution if Bungard filed the motion and was unsuccessful. (*Id.*). The advice given by Bungard was eminently reasonable when considering that success on Waldron's motion was far from certain and Waldron had a prior felony conviction for delivery of a controlled substance, which would have provided a basis for the United States to seek an enhanced sentence under 21 U.S.C. § 851. (ECF No. 36 at 15). At the time of Waldron's conviction and sentence, the existence of a prior serious drug trafficking conviction could have raised the mandatory minimum sentence for his crime from ten to twenty years' imprisonment. 18 U.S.C. § 841(b)(1)(A)(viii). Accordingly, the undersigned **FINDS** that Waldron cannot satisfy his burden under the first prong of the *Strickland* test.

With respect to the second prong, as the United States emphasizes, Waldron plainly was not prejudiced by the advice that he received from Bungard. Waldron's § 2255 motion rests on the presumption that the *Collins* decision would have required this Court to grant Waldron's motion to suppress. The undersigned disagrees with that premise. In *Collins,* the Supreme Court considered the narrow question of whether "the automobile exception to the Fourth Amendment permits a police officer, uninvited and without a warrant, to enter the curtilage of a home in order to search a vehicle parked therein." *Id.,* 138 S. Ct. at 1668. While the *Collins* decision answered that query in the negative, it did not change Supreme Court precedent related to searches done pursuant to a probation agreement.

In *United States v. Knights,* 534 U.S. 112 (2001), the Supreme Court examined whether a warrantless search of an individual's residence, supported by reasonable

10

suspicion and authorized by a probation condition, satisfied the Fourth Amendment. The Supreme Court concluded that the warrantless search was appropriate under the Fourth Amendment, because the individual was on probation at the time of the search and had agreed to allow such searches as a condition of his probation. The Supreme Court explained that the "touchstone of the Fourth Amendment is reasonableness and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other hand, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Id.* at 118-19 (quoting *Wyoming v. Houghton,* 526 U.S. 295, 300 (1999)). Recognizing that probation was a "form of criminal sanction" imposed by a court, and was one point "on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service," the Supreme Court reasoned that the "very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." *Id.* at 119 (citations and some markings omitted). The Supreme Court added that courts granting probation are permitted to impose reasonable conditions of release, even conditions that deprive probationers of the freedoms enjoyed by law-abiding citizens; including, a requirement that probationers permit warrantless searches by law enforcement. The Supreme Court stated: "When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interest is reasonable … [and] sufficient to render a warrant requirement unnecessary." *Id.* at 121 (citations omitted).

In 2006, the Supreme Court examined a related issue involving a parolee whose terms of release included a state-imposed requirement that parolees "be subject to search

or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant, and with or without cause." *Samson v. California,* 547 U.S. 843, 846 (2006). Finding that parole was more akin to imprisonment than probation, the Supreme Court accepted that a parolee had fewer expectations of privacy than a probationer, and found that the State had a right to condition parole on a parolee's agreement to waive certain freedoms typically enjoyed by citizens who were not on parole. As such, the Supreme Court found that the search of a parolee in *Samson* did not violate the Fourth Amendment, notwithstanding that the search was not based on any suspicion of wrongdoing. *Id.* at 856.

Relying on the Supreme Court's decisions in *Knights* and *Samson,* the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") agrees that individuals under court supervision have diminished Fourth Amendment rights. *United States v. Pickens,* 295 F. App'x 556, 558 (4th Cir. 2008). Furthermore, the Fourth Circuit has noted that voluntary consent to a search is an exception to the Fourth Amendment's prohibition against unreasonable searches. *Id.* at 557 (citations omitted). The defendant in *Pickens* signed a parole agreement with the State of West Virginia in which he consented to a warrantless search of his person and home at any time for supervision purposes. In light of this agreement, the Fourth Circuit found no violation of the defendant's rights when his home was searched and firearms were seized without a warrant. The *Pickens* decision is consistent with decisions of other jurisdictions and with more recent decisions of the Fourth Circuit. *See United States v. Scott,* 941 F.3d 677 (4th Cir. 2019) (finding a warrantless search of a supervisee to be constitutional in view of search provision in supervision agreement); *United States v. Plemmons,* 770 F. App'x 650, 652 (4th Cir. 2019) (holding that a warrantless search of a probationer pursuant to a probation

12

agreement was reasonable); *also, United States v. McCoy,* 847 F.3d 601, 605 (8th Cir. 2017) (finding that defendant's conditions of release permitted random inspections of his computer by pretrial services officers; therefore, a warrantless search of his computer for supervision purposes was constitutional); *United States v. Riley,* 706 F. App'x 956, 960 (11th Cir. 2017) (recognizing long-standing precedent related to the diminished rights of probationer and concluding that a warrantless search of the defendant probationer's home was reasonable in view of a provision in his probation agreement that allowed supervising officers to visit at any time).

Here, Waldron consented, as part of the probation conditions imposed by the Circuit Court of Wood County, to searches of his "person, residence, property or effects" at any time the probation officer deemed it necessary "based upon reasonable suspicion or safety concerns." (ECF No. 46-1 at 7). Waldron's probation officer received a tip that Waldron was not residing at his approved residence and was selling methamphetamine. When Waldron's probation officer, accompanied by other law enforcement personnel, located Waldron, he was driving a vehicle that contained firearms and controlled substances. Accordingly, the probation officer had reasonable suspicion to conduct a warrantless search of Waldron's person, effects, property, and residence. Moreover, when the officers entered Waldron's residence to secure it for safety purposes, they saw marijuana plainly visible on the kitchen counter. Based upon this information, the officers obtained a search warrant, examined the rest of the residence, and located significant evidence of criminal activity.

Considering the facts underlying the search of Waldron's property and residence, his motion to suppress was considerably more likely to fail than to succeed. As such, Waldron received a substantial benefit from entering into the plea agreement. Two

firearms counts were dismissed secondary to that agreement, and Waldron did not face an increased mandatory minimum sentence. Therefore, the undersigned **FINDS** that Waldron fails to establish the second prong of the *Strickland* test. As Waldron cannot show ineffective assistance of counsel, his motion under § 2255 is without merit.

### III. <u>Proposal and Recommendations</u>

The undersigned respectfully **PROPOSES** that the presiding district judge confirm and accept the foregoing findings and **RECOMMENDS** that the Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, (ECF No. 40), be **DENIED,** and that this action be **DISMISSED,** with prejudice, and removed from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be

provided to the opposing party, Judge Copenhaver, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED:** April 29, 2020

Cheryl A. Eifert
United States Magistrate Judge